857 F.2d 1469
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey HARRIS, Defendant-Appellant.
 No. 87-5635.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 6, 1988.
Decided: Sept. 2, 1988.
 
 Daniel F. Goldstein (Andrew D. Freeman, Brown & Goldstein, on brief), for appellant.
 Liam O'Grady, Assistant United States Attorney (Henry E. Hudson, United States Attorney, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and SPROUSE and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Jeffrey Harris appeals the judgment of the district court finding him guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. Harris' conviction was entered on his conditional guilty plea, in which he reserved the right to appeal the district court's denial of his motion to suppress evidence seized in a search of his residence pursuant to a search warrant. Harris contends the district court erred in failing to suppress the evidence because the search was based on an invalid warrant. We disagree and affirm his conviction.
 
 
 2
 Harris, in January 1987, shared a home with Luis Serrano at 5304 Hampton Forest Way, Fairfax, Virginia. Stipulated facts entered at the time of his plea of guilty show that he conspired over a four month period with Serrano and others to distribute cocaine. His role was to deliver cocaine for Serrano to Serrano's customers.
 
 
 3
 Before entering the plea agreement, Harris filed a motion to suppress evidence seized at the Hampton Forest Way address pursuant to a search warrant obtained and executed by Agent James L. Glass, Jr. of the Federal Bureau of Investigation. The district court denied the motion. Harris contended below that the search warrant was constitutionally invalid, and this is his sole contention on appeal. Harris' name was never mentioned in the affidavit submitted to the magistrate as a basis for obtaining the search warrant. Therefore, the sufficiency of the affidavit to support the search depends on whether it provided probable cause to believe that Serrano was using the Hampton Forest Way residence to conduct narcotics activity.
 
 
 4
 The search of the Serrano/Harris residence in Fairfax was one of numerous searches of residences, bank accounts, and vehicles made at the culmination of a long investigation into complex narcotics activities, all supported by one lengthy affidavit executed by Agent Glass. The sufficiency of the affidavit to support the warrant for all the other searches is not at issue. In fact, Harris concedes that the affidavit, as it related to the other searches, was executed in a highly professional and competent manner and unquestionably satisfied all fourth amendment criteria. He complains, however, that the portion of the affidavit relating to the search of the Serrano/Harris residence, labeled "addendum," did not furnish information sufficient to establish probable cause that Serrano conducted narcotics activities at the Serrano/Harris residence.
 
 
 5
 The principal part of the affidavit submitted by Agent Glass described an extensive narcotics investigation conducted in the Eastern District of Virginia and in the District of Columbia. Most of the information related in the affidavit was gathered from court authorized telephonic surveillance of a number of telephones. This evidence was confirmed and expanded by evidence obtained through visual surveillance and undercover contacts with numerous narcotics dealers. The principal part of Glass' affidavit concluded with a request for authorization to search property, businesses, and safe deposit boxes of numerous suspects, but did not seek a warrant to search the Serrano/Harris residence.
 
 
 6
 After the conclusion of the main body of the affidavit, in a portion labeled "addendum," Agent Glass swore to information furnished by Agent Kevin Tamez of the Drug Enforcement Administration. Tamez had supervised a separate investigation into the drug dealings of an organization in which Serrano allegedly played a prominent role. Among other things, Tamez related to Glass that his investigation showed that Serrano matched the profile of a drug dealer in a number of ways, that he was linked to some of the dealers identified in the FBI investigation, and that confidential sources reported Serrano was utilizing legitimate businesses in the District of Columbia area to distribute cocaine. Glass swore that Tamez informed him that Serrano moved to 5304 Hampton Forest Way in Virginia in November 1986 and that DEA surveillance of the residence had identified frequent visitors from Florida, Maryland, and the District of Columbia. He also stated that Tamez reported that pedestrian traffic into the residence was common throughout the evening hours.
 
 
 7
 Harris contends that the affidavit is insufficient to establish probable cause for a search of Serrano's residence because it was not based on Glass' personal knowledge, but on information related to him by DEA Agent Tamez, and because the information it contains is inadequate. This argument overlooks the information relating to Serrano described in the principal part of Glass' affidavit. We, of course, look to Illinois v. Gates, 462 U.S. 213 (1983), to determine whether probable cause exists to issue a search warrant. We consider "whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. Although the addendum to the affidavit leaves something to be desired, we need not evaluate the sufficiency of either the addendum or other parts of the affidavit in isolation. In ninety-two detailed paragraphs, Glass described the extensive FBI investigation of and information gathered about several named drug dealers. Three of the paragraphs in the affidavit recount taped telephone conversations between Serrano and Anthoni Del Sordi, Jr. It is at least strongly inferable that Serrano's coded conversation* with Del Sordi referred to illicit activities. Del Sordi was a primary suspect in the investigation, and the principal part of the affidavit provided voluminous evidence of his narcotics trafficking.
 
 
 8
 The district court, of course, in ruling on the suppression motion, was not limited to considering the validity of the warrant. The officers who searched the Serrano/Harris residence relied on a search warrant issued by a magistrate. Under the "good-faith exception" set out in United States v. Leon, 468 U.S. 897 (1984), then, the determinative issue guiding the district court was whether the affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " Id. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring)). In our view, the officers and the search they conducted easily pass the Leon test, and the evidence seized from the Serrano/Harris residence was admissible. Accordingly, the judgment of the district court is affirmed.
 
 
 9
 AFFIRMED.
 
 
 
 *
 For example, Glass' affidavit reported that in one of the taped conversations Del Sordi asked Serrano "if they are going to leave 'something' where it is and states that he threw it 'all in a bag.' " In addition to the mysterious references the parties make in the conversations, the inference they were referring to illicit transactions is supported by the evidence from other taped conversations that Del Sordi and his associates often spoke in codes in their telephone conversations and by the weight of the evidence of Del Sordi's participation in narcotics trafficking